426 So.2d 658 (1982)
Heirs of Eddie W. BERGERON
v.
Urbain FOURNIER.
No. 82 CA 0225.
Court of Appeal of Louisiana, First Circuit.
December 21, 1982.
Rehearing Denied February 17, 1983.
*659 Randall Alfred, Houma, for plaintiff and appellee.
David M. Richard, and Leslie J. Clement, Jr., Thibodaux, for defendant and appellant.
Before PONDER, SAVOIE and ELLIS, JJ.
PONDER, Judge.
Defendant appealed from the judgment fixing the boundary between his property and that of the plaintiffs.
The issues are validity of the court-appointed survey, acquisitive prescription, and costs.
We amend and affirm.
Plaintiffs have title to the northwest quarter of the southwest quarter of Section 26, Township 17 South, Range 18 East, in Terrebonne Parish. Defendant has title to the eastern half of the southwest quarter of the same section.
Upon plaintiffs' request for the appointment of a surveyor,[1] William Clifford Smith, a registered civil engineer and land surveyor, was ordered by the court to make a survey.
Defendant filed a peremptory exception of prescription claiming ownership of additional property located to the west of his tract and included in plaintiffs' title. The exception was referred to the merits.
After the trial, the court denied defendant's peremptory exception and fixed the boundary according to the Smith survey. Defendant was assessed with costs.
Defendant claims that the survey was not performed by the court-appointed surveyor.
*660 The testimony shows that Smith delegated to Stanley Marchand the field work of conducting the survey. Marchand has been employed with Smith's firm since 1958 and has conducted over four hundred surveys, but is not a registered civil engineer or land surveyor. Marchand performed the research field work and made the calculations for the survey. Every aspect of work, however, was supervised and reviewed by Smith, who made changes and corrections where necessary before he approved and signed the proces verbal. Smith and Marchand both testified that the survey was done according to prevailing practices in the surveying profession.
Defendant also asserts that only one proven section corner was determined in the survey and that no attempt was made to locate the other corners.
It is the duty of the surveyor to retrace prior government surveys in order to establish original section corners and lines. Cheramie v. Vegas, 194 So.2d 189 (La.App. 1st Cir.1966), writ refused 199 So.2d 918 (La.1967).
Marchand testified that he was able to find two of the four original government monuments in Section 26, but that only the southeast corner marker was a proven government monument. The corner was determined by retracing a survey done by the firm in the 1930's which incorporated a government survey in 1855. Extensive work has been performed in this particular township and around the properties involved. Both Marchand and Smith were convinced that the southeast corner monument was a proven government corner.
Having determined the proven government monument, Marchand used the southeast corner of Section 26 as the starting point in the survey. While he did not reconstruct all of Section 26, he did determine the south line. He then established the boundary between plaintiffs' and defendant's tracts.
Smith testified that it is not a generally accepted practice to reconstruct an entire section on sight because it is physically and economically unfeasible. Instead the calculations are made on paper. Smith stated that sections are not always perfect to right angle and therefore the four corners of a section have to be established so that they fit within the township. These calculations were made in the present case.
We find no error in the trial court's finding that the court-ordered survey and process verbal were consistent with legal requirements and performed in accordance with prevailing standards and practices.
Defendant also asserts ownership of property in addition to that described in his title.
LSA-C.C. art. 794 provides:
"When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles. If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds."
There is conflict in the testimony. A barbed wire fence presently stands about 100 to 110 feet west of the boundary established by the Smith survey. The fence runs in a north/south direction over the length of plaintiffs' property according to their title. Defendant asserts that he and his ancestors in title have possessed up to this fence for more than thirty years.
Defendant's witnesses testified that the fence was originally built around 1950 or 1951, and that prior to that time a headland, or turn row, existed in the same location. The fence has remained standing except for a period of about five years between 1964 and 1969 when both plaintiffs' and defendant's properties were leased to Homer Bourque. During the leases, a large portion of the fence was removed so that Bourque could farm across both tracts. A particular post was left in place to mark a reference for the fence line and the fence was rebuilt in the same location immediately after the leases expired.
*661 Plaintiffs' witnesses testified, however, that the fence built in 1969 was the original one. A headland had existed in the past, but it was close to the Smith survey line. One of Eddie Bergeron's sons stated that when Bourque leased the lands, this headland was destroyed and when the existing fence was built a new headland was created along that line.
Plaintiffs also introduced the testimony of Dr. John Green, an expert in botany, who testified that he found that part of the fence had been attached to trees along the fence line. Dr. Green took a core sample from one tree in which fence wire was deeply imbedded, examined the amount of growth around the wire and determined that the fence was no more than twelve years old.
The trial court determined that the fence did not exist prior to 1969. We find no error. Furthermore, there was no visible boundary for five years when the two tracts of land were leased.
Finally, defendant alleges that the trial court erred in assessing him for all costs, including the cost of the survey and expert witness fees.
LSA-C.C. art. 790 provides that when a boundary is fixed judicially, court costs are taxed in accordance with the rules of the Code of Civil Procedure.[2] LSA-C.C.P. art. 1920 permits an equitable assessment of costs.[3]
The Comments to Article 790, effective in 1978, indicate that the provision was not intended to change prior law. Under former law, the cost of a survey in a boundary dispute was generally shared equally by the parties involved. Young v. Morvant, 358 So.2d 1292 (La.App. 3rd Cir.1978). It is still a general rule that costs should be equally divided since the fixing of a boundary is of benefit to both parties in a boundary action. Smith v. Overton, 417 So.2d 872 (La.App. 1st Cir.1982).
The trial court gave no written reasons for its judgment regarding costs and the record contains no evidence justifying a departure from the general rule. We therefore amend the judgment and assess all costs equally.
For the above reasons, the judgment of the trial court is amended as to costs, and affirmed in all other respects.
AMENDED AND AFFIRMED AS AMENDED.
NOTES
[1] LSA-C.C.P. art. 3692:

"The court may appoint a surveyor to inspect the lands and to make plans in accordance with the prevailing standards and practices of his profession indicating the respective contentions of the parties."
[2] LSA-C.C. art. 790:

"When the boundary is fixed extrajudicially costs are divided equally between the adjoining owners in the absence of contrary agreement. When the boundary is fixed judicially court costs are taxed in accordance with the rules of the Code of Civil Procedure. Expenses of litigation not taxed as court costs are borne by the person who has incurred them."
[3] LSA-C.C.P. art. 1920:

"Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable."