DOMENGEAUX, Chief Judge.
Alice Harmon appeals the judgment of the trial court which established a boundary line between her property and that of her nephew, Morris Harmon, the defendant. Morris Harmon answered the appeal, also alleging error in the placement of the boundary line, and contending the trial court erred in awarding Alice Harmon damages for trespass. We reverse and render.
The property in dispute is located in a rural area of Lafayette Parish near Ridge. The property has been in the Harmon family since the beginning of this century and has always been referred to as a 20 acre tract. The property was surveyed for the first time in 1989, and again in 1990, ■ at which time it was determined that the tract contains only 19.03 acres. We have attached as an appendix to this opinion a reproduction of the pertinent portion of the 1990 survey.
In 1910, Noah Harmon sold the property to Joseph Harmon. In 1924, Joseph Harmon conveyed four acres on the extreme western side to his son, Willie, the next four acres to his son, Calvin, and the middle four acres to his son, Isaac. Joseph conveyed the remaining acreage to his daughters, Louella and Rosella, in 1927. At that time the eastern acreage consisted of 7.03 acres, although the conveyance records indicate that eight acres were transferred, foúr to each daughter.
The plaintiff herein, Alice Harmon, is the youngest child of Joseph. In 1945, she purchased from her siblings what she thought was 11 acres on the eastern portion of the 20 acre tract. The defendant herein, Morris Harmon, is the son of Willie Harmon. Willie and his wife had obtained nine acres of the tract, and when they died, Morris and his siblings became the owners of the western nine acres. Morris testified at trial that his individual portion is supposed to be the 3.9 acres adjoining Alice’s property, apparently based on an informal division of the property.
In 1951, Morris moved a house onto the property that he thought was his. He still lived in this house at the time of trial. Through the years, Morris built a garage and a barn and planted a garden on the property, all of which are identified on the survey attached hereto. He testified that there was an old barbed wire fence east of his house which he had always assumed was the boundary between Alice’s property and his. (The fence is identified by points L and M on the survey.) Nevertheless, when Morris put up a chain link fence in the 1960s, he placed it about 10 feet west of the old fence. (The new fence is identified by points E, F, G, H, I, J, and K.)
In this appeal, Morris contends the chain link fence should be declared the boundary between his property and Alice’s property. He argues that even if he does not have good title to that portion of the tract, he has acquired ownership by the prescription *1325 of thirty years based on his possession since 1951.
Alice’s position in this case is based on an oral lease dating back to 1951 wherein Alice leased her 11 acres to Morris for him to cultivate. Morris paid Alice $88.00 per year ($8.00 per acre) for the right to use the land for farming, and later for cattle grazing. Eventually, the rent was raised to $200.00 per year. When Morris decided he no longer wanted to rent Alice’s land, Alice decided the land should be surveyed and a true boundary established.
Alice obtained a survey in 1989, but this survey was not introduced into evidence. The survey obtained by Morris in 1990 was introduced into evidence as a joint exhibit and revealed that the 20 acre tract actually contains only 19.03 acres. No one disputes the fact that the tract is not as large as the entire family believed since at least 1910. There is evidence in the record indicating that some of the land on the western side of the tract was lost to an adjoining landowner by acquisitive prescription, but the record does not reveal how much land was lost, where it was located, or if either surveyor considered this information in preparing his plat. There was also no testimony indicating that the land lost was located on Morris’ homestead, and it is therefore not relevant to this dispute.
Alice contends that because she rented 11 acres to Morris, she should be declared the owner of 11 acres, more or less, regardless of whether those 11 acres include Morris’ homestead. Alice suggests points A and B of the survey should delineate the boundary line. Morris argues that he rented farm land from Alice, but he possessed as owner the land where his homestead is. In placing a boundary line between points Q and R as shown on the attached survey, the trial judge gave Morris and his siblings the western nine acres of the tract. This result pleased no one; Alice lost some of her 11 acres, and Morris lost part of his homestead which he possessed since 1951.
The critical inquiry in this case is the nature of Morris’ possession. Clearly, Morris did not possess the entire tract as owner. He was the lessee of certain farm land on the eastern side of the tract for which he paid rent to Alice. However, since 1951 Morris did possess as owner the middle portion of the tract, where his home and outbuildings are and which we refer to as his homestead. Morris had the area fenced in, and he and his children treated it as their own land. Indeed, not only Alice herself, but also a myriad of witnesses called on her behalf, testified that until the 1989 survey, they believed Morris was living on his own portion of the tract.
The titles held by Morris and Alice are insufficient by themselves to establish the appropriate boundary. The land had never been surveyed, and the conveyances transacted throughout the 20th century have apparently referred to estimated acreage. No boundary markers were ever identified; Morris knows only that he owns land adjacent to Alice, and Alice knows only that she owns land adjacent to Morris.
Acquisitive prescriptive beyond title, or regardless of title, by possession to a visible boundary for a period of thirty years can be pleaded in a boundary action. Cuthbertson v. Unopened Succession of Tate, 544 So.2d 1236 (La.App. 3d Cir.1989). La.C.C. Art. 3486 provides that ownership in an immovable may be acquired by the prescription of thirty years without the need of just title or possession in good faith. Further, La. C.C. Art. 794 mandates that a boundary shall be fixed in accordance with possession if acquisitive prescription has been proved. It states:
When a party proves acquisitive prescription, the boundary shall be fixed according to the limits established by prescription rather than titles. If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundaries shall be fixed along these bounds.
In Schexneider v. Villejoin, 493 So.2d 860 (La.App. 3d Cir.1986), writ denied, 496 So.2d 1045 (La.1986), we explained the burden of proof required to show acquisitive prescription:
The possession necessary to maintain a plea of acquisitive prescription depends *1326 on the nature and character of the land. William T. Burton Industries, Inc. v. Wellman, 343 So.2d 996 (La.1977). Where there is a visible boundary which has been in existence for 30 years or more and the defendant in a boundary action and his predecessors in title have actually possessed land extending to that visible boundary, a plea of prescription should be sustained. Sessum v. Hemperley, 233 La. 444, 96 So.2d 832 (1957). Once possession has begun, it continues unless it is abandoned or the possessor is evicted. LSA-C.C. Art. 3433.
Schexneider, 493 So.2d at 865.
After reviewing the testimony presented herein, we conclude Morris did prove acquisitive prescription of thirty years. He lived on the same piece of land since 1951, believed the land to be his own, and publicly treated it as his own. No one, including Alice, questioned his right to be on the land. When Morris’ possession as owner began, it included the land up to the barbed wire fence. By building a new fence slightly to the west of the old fence, Morris abandoned his possession of that strip between the two fences. However, his possession of that portion within the chain link fence, a visible boundary, was continuous and uninterrupted. Therefore, regardless of the titles held by Alice and Morris, Morris is the owner of that portion of the tract up to the chain link fence which he possesses as his homestead.
In reaching this conclusion, we necessarily find that the trial judge committed manifest error in drawing the boundary line where he did. The trial judge did not consider Morris’ possession, nor did he consider Alice’s claim to 11 acres. Rather, the trial judge gave Morris and his siblings exactly nine acres, in accordance with their title, even though the evidence indicated that part of those nine acres had been lost to an adjoining landowner. Further, the line drawn by the trial judge followed no natural or man-made boundary. Conversely, we have concluded that the number of acres delineated in the titles held by Morris and Alice is not pertinent to this dispute, as their titles have been superseded by Morris’ proof of acquisitive prescription, and the boundary must be drawn to the limits of his possession in accordance with La. C.C. Art. 794. See also Miller v. Hebert, 499 So.2d 1087 (La.App. 3d Cir.1986).
Throughout this litigation, Alice’s primary defense to Morris’ plea of acquisitive prescription has been Morris’ knowledge of her claim to 11 acres. Morris’ testimony reveals that in fact he never questioned Alice’s claim to 11 acres. Additionally, when this dispute arose, Morris even offered to buy from Alice any land which she claimed as part of her 11 acres and which he then possessed. Morris’ conceding attitude constitutes neither a renunciation of prescription (which must be in writing to affect immovables; see La.C.C. Art. 3450), nor an acknowledgment of Alice’s right to claim the land (which is made prior to the accrual of prescription; see La.C.C. Art. 3449, Revision Comment (c)). It is the nature or the character of possession that determines whether acquisitive prescription has run in favor of the possessor, not the knowledge* or doubt of the possessor.
In Snellings v. Lutz, 219 So.2d 781 (La.App.2d Cir.1969), writ denied, 253 La. 1090, 221 So.2d 520 (La.1969), the court articulated the principles applicable to this case:
As long as visible bounds exist, it is not necessary that the boundary sought to be established has been “recognized as the boundary,” as maintained by appellants. The acquisition of knowledge that the visible boundary does not coincide with the ideal boundary does not change the character of the possession exercised by one who claims ownership of land beyond his ideal title. It is not the knowledge of the possessor, but the character of his possession, that is important. If that possession is as owner, knowledge of the existence of the ideal boundary at a different place from the visible bounds of the land possessed should not change the nature of the possession. Possession having been commenced as owner, it is presumed to be continued in the same capacity until the *1327 contrary is shown. Civil Code Arts. 3443, 3444, 3488, 3492.
Snellings, 219 So.2d at 788. See also Livingston v. Unopened Succession of Dixon, 589 So.2d 598 (La.App. 2d Cir.1991).
For the foregoing reasons, the judgment of the trial court is reversed. The boundary line which separates the property of Alice Harmon from that of Morris Harmon is determined to be at the chain link fence which is designated as points E, F, G, H, I, J, and K on the survey which is reproduced in part and attached hereto as an appendix. That portion of the judgment awarding Alice Harmon $2,500.00 as damages for illegal trespass is also reversed. Cost of this appeal are assessed to the plaintiff, Alice Harmon.
REVERSED AND RENDERED.
*1328 APPENDIX
[[Image here]]